UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Cause Nos.  3:09-CR-32(01)RM and |
| | ) |            3:09-CR-79(01)RM |
| LESLEY MARLIN SCHOLL | ) | |

<u>SENTENCING MEMORANDUM</u>

In the summer of 2008, Dr. Lesley Scholl initiated discussions with Charles Smith regarding the murder-for-hire of his wife Allison Scholl, her divorce lawyer Stephen Rothberg, and his former business partner Dr. Craig Collier, ultimately agreeing to pay Mr. Smith $200,000.00 for each of the three killings. When Mr. Smith notified law enforcement agents of the murder-for-hire plan in January 2009, they staged Dr. Collier's murder and photographed it for electronic transmission to Dr. Scholl. Mr. Smith met with Dr. Scholl on January 21, told him he'd killed Dr. Collier, and showed him the staged picture of Dr. Collier lying in the snow next to a vehicle. Dr. Scholl asked about disposition of the bullet casings, and gave Mr. Smith a silencer and $220 in cash to travel to Fort Wayne to kill attorney Rothberg. Police officers arrested Dr. Scholl and confiscated more than 350 firearms — 330 were firearms not requiring federal registration, 22 were registered Title 26 firearms, and at least three were unregistered Title 26 firearms. Dr. Scholl agreed to provide information regarding the whereabouts of three additional Title 26 firearms that have yet to be located. Dr. Scholl pleaded guilty to count 2 of the indictment in 3:09cr32 charging him with illegal transfer of a silencer in violation of 26 U.S.C. §§ 5845(a) and 5861(e), and to the sole count of

the information in 3:09cr79 charging him with illegal possession of a machine gun in violation of 26 U.S.C. §§ 5845(a) and 5861(d).

Dr. Scholl didn't object to the presentence report. The government objected to ¶¶ 25, 26, 36 and 37 of the presentence report, which recommend a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b). The court adopts as its own findings ¶¶ 1-24, 27-35 and 38-97 of the presentence report, specifically including ¶¶ 47-76 concerning the defendant's financial condition and earning ability.

A sentencing court must first compute the guidelines sentence correctly, then decide whether the guidelines sentence is the correct sentence for that defendant. United States v. Santiago, 495 F.3d 820, 825 (7th Cir. 2007). The court employs the 2008 version of the sentencing guidelines.

The court groups together the two counts separately charged against Dr. Scholl. U.S.S.G. § 3D1.2(d). The base offense level for illegally transferring a silencer and illegally possessing a machine gun is 18. U.S.S.G. § 2K2.1(a)(3). The sentencing guidelines require a 4-level increase because the offense involved 10 firearms. U.S.S.G. § 2K2.1(b)(1)(B). Dr. Scholl's offense level is increased by another 2 levels under U.S.S.G. § 2K2.1(b)(3)(B) because one of the firearms, a Manville 12 gauge, was a destructive device, and by 4 more levels because Dr. Scholl transferred the silencer with knowledge and intent that it would be used in connection with another felony offense (murder-for-hire), U.S.S.G. § 2K2.1(b)(6), bringing the total offense level to 28.

But when the defendant uses or possesses a firearm in connection with the commission or attempted commission of another offense, as Dr. Scholl did, the court must apply the base offense level for the substantive offense, if it's greater — and it is. *See* U.S.S.G. §§ 2K2.1(c)(1)(A) and 2X1.1. The base offense level for the substantive offense of use of interstate commerce facilities in commission of a murder-for-hire is 32. U.S.S.G. § 2E1.4.

Dr. Scholl pleaded guilty to the two offenses, sparing the government the expense of trial, and would normally be eligible for a reduction in the offense level for his timely acceptance of responsibility, U.S.S.G. § 3E1.1. The government, however, objects to any reduction in offense level for acceptance of responsibility because Dr. Scholl hasn't truthfully admitted his guilt and has falsely denied his participation in the murder-for-hire scheme, making it necessary for the government to bring the additional charge and special plea agreement terms. Dr. Scholl disagrees and contends that he has pleaded guilty to these charges. The court finds that a reduction for acceptance of responsibility would be inappropriate in this case and, accordingly, sustains the government's objections to ¶¶ 24, 26, 36, and 37. The murder-for-hire is relevant conduct (it determines the offense level) and Dr. Scholl has falsely denied it. Dr. Scholl's total adjusted offense level remains at 32.

Dr. Scholl's criminal history is minimal. He has no juvenile adjudications and one adult conviction in 2007 for operating while intoxicated. One criminal history point is assessed for that net 2-day sentence, U.S.S.G. § 4A1.1(c), and two

3

more points are assessed because Dr. Scholl committed these crimes while he was on probation. U.S.S.G. § 4A1.1(d). The three points assessed place Dr. Scholl in criminal history category II. The advisory guideline range for an individual with an offense level of 32 in criminal history category II is 135 to 168 months' imprisonment. U.S.S.G. § 5A.

The court is to use the guideline range as the starting point and the initial benchmark, but may not presume that the recommended range is reasonable. Gall v. United States, 128 S.Ct. 586, 596-597 (2007). As just calculated, the sentencing guidelines, which ordinarily pose the best hope, on a national basis, for avoiding unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, 18 U.S.C. § 3553(a)(6); United States v. Boscarino, 437 F.3d 634, 638 (7th Cir. 2006), recommend a sentencing range of 135 to 168 months. The plea agreements, if accepted, bind the court to a combined fifteen year sentence. The court deferred acceptance of the plea agreements at the change of plea hearing.

The stipulated 180-month sentence is not within the 135 to 168 month advisory range, so the court should satisfy itself that the agreed sentence departs from the advisory range for justifiable reasons. U.S.S.G. § 6B1.2(c)(2). A sentence well above the advisory range for Dr. Scholl is justifiable. Ample grounds exist for the court to impose an above-range sentence even without an agreed sentence under Rule 11(c)(1)(C). Under Dr. Scholl's plea agreement, a charge carrying a 30-year statutory consecutive minimum sentence is to be dismissed. 18 U.S.C. §

924(C)(1)(B)(ii). More importantly, this was not simply a single murder for hire scheme reflected in the advisory sentencing range; Dr. Scholl was plotting the murders of three people. The advisory range considers only a small fraction of the firearms in the arsenal Dr. Scholl maintained, and three Title 26 firearms registered to Dr. Scholl haven't been recovered.

The more challenging question isn't whether justifiable reasons support an above-range sentence, but rather whether a still higher sentence is so justifiable that the court should reject the plea agreement. The court inquired of both sides why a fifteen-year sentence is appropriate as distinct from a higher sentence, and the court received forthright answers. Recognizing that courts do not know the ins and outs of a case as well as counsel, and that this case carries no suggestion that anyone is giving away the store, the court accepts the plea agreement, with its agreed 180-month sentence.

A three-year supervised release term is appropriate in both 3:09cr32 and 3:09cr79, with the terms to run concurrently. 18 U.S.C. § 3583(b)(2); U.S.S.G. § 5D1.2(a)(2). The binding recommendation in the plea agreement doesn't include a fine, but Dr. Scholl is able to pay the $17,500 fine the guidelines recommend. U.S.S.G. § 5E1.2(c)(3). A special assessment of $200.00 is mandatory. 18 U.S.C. § 3013.

Accordingly, the court accepts the plea agreement, and it is the judgment of the court that the defendant, Lesley Marlin Scholl, Sr., is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 96 months on

count 2 of the indictment in 3:09cr32, and 84 months on count 1 of the information in 3:09cr79, with the terms to run consecutively, for a total of 180 months.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of **3** years. Within 72 hours of release from the custody of the Bureau of Prisons, the defendant shall report in person to the probation office in the district to which he is released.

While on supervised release, the defendant shall not commit another federal, state, or local crime, shall comply with the fifteen standard conditions of supervised release that this court has adopted, and shall comply with the following additional conditions:

1. the defendant shall submit to one drug urinalysis within 15 days after being released on supervision and two periodic tests thereafter;
2. the defendant shall not possess a firearm or destructive device;
3. the defendant shall cooperate in the collection of DNA as directed by the probation officer;
4. the defendant shall pay the financial penalty imposed by this judgment, and as long as any part of the fine remains unpaid, the defendant shall provide the probation officer with access to any requested financial information and, unless the defendant and the probation officer have agreed on a reasonable installment payment schedule and the defendant is in compliance with that payment

schedule, shall not incur any new credit charges or open additional lines of credit without the probation officer's approval.

The defendant shall pay to the United States a fine of $17,500 in cause no. 3:09cr32, a special assessment of $100 in cause no. 3:09cr32, and a special assessment of $100 in cause no. 3:09cr79, all of which shall be due immediately. The fine shall be paid in monthly installments of not less than $100 commencing 30 days after release on supervision until paid in full.

The court recommends that the Bureau of Prisons designate as the place of the defendant's confinement, if such placement is consistent with the defendant's security classification as determined by the Bureau of Prisons, the Federal Medical Center at Butner, North Carolina, or the facility at Pensacola, Florida, or the Federal Medical Center at Lexington, Kentucky.

ENTERED:    October 9, 2009

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court

cc:   L. Scholl
      W. Stanley/M. Tuszynski
      Donald Schmid
      USM
      USPO